KRUEGER, Respondent, vs. CHASE, Trustee, Appellant.

*April 6—July 3, 1920.*

*Physicians and surgeons: Malpractice of dentist: Pieces of tooth and filling escaping into patient's lung: Negligence: Proximate cause: Opinion evidence: Weight on appeal.*

1. In an action against a dentist for malpractice, the evidence is *held* insufficient to show that he was negligent in failing to protect the patient's throat, or that his negligence, if any, in failing to discover a filling and particles of a tooth which

escaped into plaintiff's lung was the proximate cause of the injury, in that it did not appear that anything more could have been done than was done by the dentist to prevent their escape into her throat if they had been discovered.

2. Where it is claimed that the dentist was negligent in failing to discover a filling when examining teeth prior to removing them, it must be proved, and not left to conjecture, that if the filling had been discovered the operation would have resulted differently.

3. Where a verdict based on opinion evidence does not commend itself to the court as reasonable or sound, it will not be given the weight accorded to a verdict resting upon inferences drawn from facts as distinguished from mere opinions.

4. What would constitute ordinary care on the part of a dentist in removing teeth, to prevent a filling and particles of a tooth from entering the patient's throat, is to be determined by the testimony of experts and not as a matter of common knowledge.

APPEAL from a judgment of the municipal court of Brown county: CARLTON MERRILL, Acting Municipal Judge. *Reversed.*

Malpractice. G. R. Hickey is a dentist engaged in the practice of his profession at Green Bay. As a result of a prior examination and consultation, on January 18, 1918, the plaintiff went to St. Vincent Hospital, where she was anesthetized, her family physician, Dr. R. M. Burdon, administering the anesthetic, and Dr. Hickey removed eleven teeth. Just prior to the operation Dr. Hickey again examined the plaintiff's mouth and teeth, discovered no fillings, and discovered no fillings at the time the teeth were pulled. At the same time Dr. Burdon examined the plaintiff's mouth, and he saw no fillings in any of the teeth. The next day the plaintiff commenced to cough, thought that she was suffering from a cold, and pneumonia developed, for which Dr. Burdon treated her for four or five weeks. The plaintiff claims that six weeks after the operation she coughed up two pieces of tooth, and eleven weeks and five days after the operation coughed up a large silver filling, about one pennyweight in weight. The plaintiff had an abscess in her right

lung, it being conceded on all sides that the presence of the pieces of tooth and the filling would be sufficient to account for the abscess and pneumonia.    It was the claim of the plaintiff that Dr. Hickey had not used proper care to prevent the escape of the filling and pieces of tooth into her lungs, and that by reason of his negligence and the unskilful manner in which Dr. Hickey performed his work he was liable to the plaintiff for ·damages.

The case was tried before the court and a jury, and the jury found by special verdict: (1) that the plaintiff was injured by the filling of a tooth escaping into her lung; (2) that the plaintiff was injured by pieces of tooth escaping into her lung; (3) that the defendant in extracting plaintiff's teeth and in his treatment and care of her failed to exercise such reasonable care and skill as is ordinarily possessed and exercised by dentists in good standing, etc.; (4) that the failure to use such care and skill was the proximate cause of the plaintiff's injury; (5) that Dr. Hickey did not use ordinary care and skill by reason of his failure to discover before extraction that there was a filling·among the teeth extracted; (6) that the failure to use such skill and care was the proximate cause of the plaintiff's injury; and assessed damages at $6,500.

There were proper motions to preserve the questions raised here.    Plaintiff had judgment for the amount of the verdict, from which the defendant appeals.

For the appellant there were briefs by *Minahan, Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *Eben R. Minahan.*

For the respondent there was a brief by *Classon & Whitcomb* of Oconto, attorneys, and *Allan V. Classon* of Oconto and *M. E. Davis* of Green Bay, of counsel, and oral argument by *Mr. Allan V. Classon* and *Mr. Davis.*

The following opinion was filed May 4, 1920:

ROSENBERRY, J.    The defendant contends, first, that no actionable negligence was proved; and second, that the in-

jury was the result of unavoidable accident. The plaintiff contends, first, that the defendant was negligent in failing to protect the throat of the plaintiff by failing to place a sponge or packing in plaintiff's throat before he operated upon each tooth; and second, that he was negligent in failing to observe the filling, to discover that it was missing, when he extracted the tooth, and in failing to make search for the missing part.

As regards the first claim of the plaintiff, a careful reading of the record convinces us that Dr. Hickey did all that any reputable practitioner of good standing in the vicinity or locality does in that respect, and more than some of the practitioners do, so that a finding of negligence predicated upon a failure to properly guard the throat cannot be sustained.

As to whether or not the finding of the jury that he was negligent in failing to discover the presence of the filling is sustained by the evidence we are not agreed, but, assuming that he was negligent in that respect, we are of the opinion that there is no evidence that such failure was the proximate cause of the injury sustained by the plaintiff. It appears that the entrance of particles of teeth or filling escaping from the mouth during an operation into the trachea and thence into the lung is a thing of very rare occurrence. Twelve physicians and dentists testified in this case. Six of them had been engaged in extracting teeth under anesthetics for from sixteen to thirty-three years, and others had had a wide experience. Some had performed similar operations as many as four or five hundred times, and an injury such as the plaintiff suffered in this case had not occurred in the whole range of their experience. The evidence in this case tends to show that accidents of this type are of very rare occurrence. It is further established that in spite of all precautions it may occur, as the opening to the throat cannot be effectually closed without cutting off the patient's breath, and of course, if long con-

tinued, causing unfavorable results. It is not an infrequent thing for a dentist to perform the operation unaided. There is nothing in the case which tends to show that had Dr. Hickey discovered the filling at the time of his first or second examination a different result would have been arrived at, a fact that must be proved and not left to conjecture if defendant is to be held liable. There is evidence of one dentist who testified that if he missed a filling he would stop the operation and summon a physician. He is practically alone in this position, the testimony being to the effect that it is not unusual for pieces of broken tooth or filling to escape into the throat and then into the esophagus and into the stomach. They pass on through the alimentary canal or are vomited up, as the case may be. It is not ordinarily a cause of any concern.

It is found inferentially by the trial court that Dr. Hickey did all that was necessary to comply with the standard of care as established by the expert testimony upon the trial. The plaintiff attempted to meet this situation by testimony by experts that, had Dr. Hickey known of the existence or location of the filling, he would have discovered on examining the tooth which held it, after that tooth was pulled, that the filling had been dislodged, whereupon it would become his duty to institute a search for it. There is no evidence, however, from which it can be inferred that, had the filling been missed, any search, however diligent, would have discovered it, or the accident been avoided, inasmuch as everything known to dental science was done to prevent the filling from going into the throat in any event. All that could be done under any circumstances was to do what was done, to protect the throat during the operation and swabbing out and cleaning out the mouth as the operation progressed. That teeth, especially those in poor condition (and plaintiff's teeth were that), fracture; that no matter what precautions are taken it is not possible under such circumstances to determine accurately whether all fragments are

removed; and that in spite of such precautions fragments of tooth or teeth themselves may be thrown back into the throat, appears from the expert testimony offered on behalf of plaintiff.

While there is a conflict in the expert evidence as to the manner in which the operation should have been performed and the degree of care which Dr. Hickey should have exercised, we do not for that reason feel bound, even though the jury has found a verdict based thereon. Where the verdict of a jury based upon opinion evidence does not commend itself to the court as reasonable or sound, it will not be given the weight which is accorded to a verdict where it rests upon inferences drawn from facts as distinguished from mere opinion. *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597, 120 N. W. 518; *Krawiecki v. Kieckhefer Box Co.* 151 Wis. 176, 138 N. W. 710.

The trial court was of the opinion that whether Dr. Hickey was negligent in permitting the escape of the particles of tooth and filling into the plaintiff's throat was not to be determined in accordance with the practice as established by the testimony of witnesses in the vicinity in which Dr. Hickey practiced, but was a matter which might be determined from common knowledge. He regarded the escape of the foreign matter into the plaintiff's throat as a physical fact, about which any ordinarily intelligent individual can form as correct a judgment as could the experts. In this we think the trial court was in error. The whole operation and the degree of care to be exercised by the operator is a matter peculiarly within the knowledge of those who are skilled in dentistry, and while the prevention of accidents may seem simple to the outsider, it may as a matter of fact be quite otherwise in actual practice. It is easy for one to be wise in fields of activity other than those with which he is most familiar, and to erect standards of care that may be wholly inapplicable. What constitutes ordinary care in a case such as this is to be determined by the testimony of

those who know what it is and not as a matter of common knowledge. *McGraw v. Kerr,* 23 Colo. App. 163, 128 Pac. 870.

In our view, assuming that Dr. Hickey was guilty of a want of ordinary care in failing to discover the filling in question before proceeding with the operation, there is nothing in the evidence to substantiate the finding that his failure to make the discovery either of the filling or of the particle of tooth in any way contributed to the plaintiff's injury. According to the practically undisputed evidence, nothing more could have been done to prevent the escape of the pieces into the plaintiff's throat than was done in the present case. The accident was a very unfortunate one for the plaintiff, resulting in a serious injury, but it does not appear that such injury was caused by the failure of Dr. Hickey to observe the filling. It was rather the result of unavoidable accident, for which he is not liable.

*By the Court.*—Judgment reversed.

A motion for a rehearing was denied, with $25 costs, on July 3, 1920.