[Civ. No. 6774. First Appellate District, Division One.—March 29, 1930.]

ROY NELSON, a Minor, etc., Respondent, v. PAINLESS PARKER et al., Appellants.

J. Hampton Hoge for Appellants.

E. C. Gridley, Dunn, White & Aitken, Hamilton Wright and W. M. Nold for Respondent.

DEASY, J., *pro tem.*—Plaintiff brought this action to recover damages from the defendants for alleged malpractice. On or about the eighteenth day of February, 1918, plaintiff, who at that time was between six and seven years old, was taken by his mother to a dental office at 12th and Broadway Streets in the city of Oakland, to have a dentist examine him. He had suffered from a severe toothache for two nights before. The name Painless Parker Dentist appeared on the doors and windows of the office, and pictures of Dr. Painless Parker were similarly displayed. Upon examination of the boy's mouth, the dentist in charge, Dr. E. T. Mohney, stated that two teeth were in bad shape and should be removed. With the consent of the mother he proceeded to extract the two teeth. One of them he removed from the boy's mouth, but the other slipped out of the forceps and disappeared. Dr. Mohney searched for it, examined the boy's mouth and put his fingers down the boy's throat, but failed to find the missing tooth. Plaintiff immediately began choking or coughing, and the spell continued for some

minutes, after which he seemed improved and was taken home. That night he had a chill and became quite sick. According to the record, he suffered from cough and loss of breath and had several attacks of pneumonia and was quite sick and ailing at intervals during a period of several years thereafter, and was attended by many doctors. Finally, in October, 1924, according to plaintiff's testimony, he had a very severe coughing spell one day on the street, and coughed up the tooth, after which his health improved, and he became more like a normal boy of his age than he had been prior to that time.

The case was tried before a jury, which brought in a verdict in plaintiff's favor against both defendants for the sum of twelve thousand five hundred dollars. From the judgment rendered on this verdict defendants have appealed.

The record is very voluminous, a great deal of testimony having been introduced to show the condition of plaintiff before and after the extraction of the teeth. There is no need to review it in detail here, since, while there is a great deal of dispute between the parties on the question as to whether the lost tooth was ever in plaintiff's lung or bronchial tubes, there was a conflict in the evidence on the subject, which the jury has resolved in plaintiff's favor, and this court is bound by that finding. Furthermore, the questions raised by appellants do not involve the sufficiency of the evidence on that point.

Appellants do contend, however, that the evidence is insufficient to show negligence on the part of defendants or their agent. The briefs contain quite an elaborate presentation of the conflicting views of the parties on this question, but it is quite apparent that there is testimony in the record which, if believed by the jury, was sufficient to justify the finding of negligence. Without attempting any analysis of the evidence, we think it will be sufficient merely to refer generally to the testimony of the boy's mother as to what Dr. Mohney did in extracting the teeth, and to Dr. Mohney's testimony as to how he held his fingers, and to the expert testimony of Dr. Parker and other dentists who were called by plaintiff, and who described to the jury in detail the manner in which the operating dentist should hold his fingers in order to guard against a tooth dropping down the throat of the patient. All of this created a conflict

which when resolved by the jury became binding upon this court, and cannot be disturbed. In addition to the evidence contained in the transcript, it appears from the record that Dr. Mohney, Dr. Parker and others illustrated to the jury by the use of their fingers and with a model the correct way that the fingers should be held during the operation. There is no way in which we can visualize these illustrations, nor can we indulge in speculation or conjecture concerning them. In accordance with the fundamental principles governing us we must conclude that the illustrations, coupled with the oral testimony of the witnesses, furnished a proper basis for the action of the jury.

Appellants' next contention is that in an action of this kind expert evidence is necessary to establish the negligence, and that there being none, the judgment should be reversed. We will agree with the first part of this proposition partially only, for reasons which will later be more particularly referred to. But as has been said heretofore, there was some testimony of experts relative to what should have been done by the operating dentist, and it was for the jury to determine the facts. They saw and heard the witnesses and saw the gestures which illustrated the proper thing to be done, and were in a better position to resolve the conflict than is an appellate court. It is true that the evidence of negligence in the instant case was slight, and its probative value may not be great, but we may not interfere with the finding of the jury on that account. As has been said by the Supreme Court in a recent case: "Where the verdict of the jury and the judgment based thereon may be sustained on any reasonable theory, it will not be disturbed by an appellate court." (*Rocha* v. *Garcia,* 203 Cal. 167 [263 Pac. 238, 240].)

Appellants also claim that their motion for a nonsuit should have been granted, and also that the court should have granted their motion for a directed verdict. Our views as to the state of the evidence preclude us from any further consideration of these claims. If there was any evidence upon which the jury could find a verdict for plaintiff, the case should have been submitted to them. There was no error in the denial of the motions.

Appellants next claim that it was error for the court to give instruction No. 28, which reads as follows:

"You are hereby instructed that if you find from a preponderance of the evidence that any act or omission, or acts or omissions, if any, of the defendants, or either of the defendants, or any of their or either of their servants, agents or employees, acting within the scope of their employment, was of such a nature as would warrant you in saying whether or not it was negligence as a matter of common knowledge, then I charge you that you may find such act or omission, or acts or omissions, if any, to be negligence, without resorting to expert testimony as the basis of your finding, and I further instruct you that if you find from a preponderance of the evidence that such act or omission, or acts or omissions, if any, proximately caused the injury or injuries or any of them, herein complained of, that the plaintiff is entitled to recover against such defendant or defendants."

Two other instructions concerning the same general subject matter were given by the court.

No. 27 is very similar to No. 28, and reads as follows:

"You are instructed that unless you find from a preponderance of the evidence that any act or omission, or acts or omissions, if any you find, by defendants, or either of the defendants, or any of their or either of their servants, agents or employees, acting within the scope of their employment, was of such a nature as to warrant you in saying whether or not it was negligence as a matter of common knowledge, then you must make your findings as to whether or not the defendants, or either of the defendants, or any of their or either of their servants, agents or employees, acting within the scope of their employment, were negligent, from a consideration only of the testimony of competent witnesses, that is, a dentist or dentists, and that the testimony of other witnesses upon this point cannot be considered."

No. 40 is apparently the very antithesis of these two, and is as follows:

"You are hereby instructed that what is or is not proper practice in the performance of an extraction by a dentist, or what is or is not the usual practice, is a question for experts, and can be established only by their testimony. In other words, in determining such issue, you must base your findings on the testimony of dentists who have been produced as experts in this action."

■ There is no distinction between an action against a dentist for malpractice and a similar one against a physician. Each is specially trained for his work in a highly technical calling. The rules of law applicable to the one are applicable to the other. It is well settled in this state that neither can be held to guarantee the results of his professional services, and that all that either undertakes or represents in treating a patient is that he possesses that reasonable degree of skill and learning possessed by others of his profession in the same locality, and that he will use reasonable and ordinary care and skill in the application of such knowledge to accomplish the purpose for which he was employed. (*Houghton* v. *Dickson,* 29 Cal. App. 321 [155 Pac. 128]; *Perkins* v. *Trueblood,* 180 Cal. 437 [181 Pac. 642].)

■ The rule announced by the trial court in instruction No. 40 is a correct statement of the law as applied to the more technical matters of dentistry or surgery, but it has not an application which is universal. Many things may happen in the course of a dental operation to extract a tooth or teeth, which, to any person possessed of normal faculties, would appear to be negligent just as the same situation would in the course of a surgical operation, where a sponge or a forceps or a surgical needle or a piece of a steel spring were left in the body of the patient after the operation had been concluded. And so it might well be that if a dentist dropped a tooth into the throat of a patient and did not use the methods which common knowledge would suggest to an ordinary person in an endeavor to recover it, the testimony of experts would not be necessary to establish negligence in such a case.

"Expert testimony is not required, however, where the results of the treatment are of such character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. That some facts tending to establish plaintiff's case may have been shown by non-expert testimony is not objectionable." (48 Corpus Juris, 1151.)

Where a surgeon in an operation loses a metallic spring in the wound and fails to remove it, it authorizes the jury to infer negligence without the aid of expert evidence. (*Wharton* v. *Warner,* 75 Wash. 470 [135 Pac. 235].)

In *Vergeldt* v. *Hartzell,* 1 Fed. (2d) 633, it was held that where the question in issue in an action against a physician or surgeon is not one of skill in treatment or the performance of an operation but of plain negligence and failure to use proper care, as to which a layman is as competent to judge as another physician or surgeon, it is not one which must be determined solely by the testimony of experts.

In this case Mrs. Nelson, the mother of plaintiff, testified that as the forceps were applied it seemed but an instant until the child started strangling and choking; that he turned black and fought until he was exhausted for breath; that the doctor and the nurse, after she came in, hunted for the teeth; that the dentist ran his finger down the patient's throat three times; that the dentist said that a tooth had gotten away; that the nurse went for the head nurse, and when she arrived the dentist was still working with the patient, that is, ran his finger down his throat; that the dentist turned to Mrs. Nelson and told her to give the patient a good laxative so that if the tooth had passed into his stomach it would pass on, and to watch him carefully; that the patient had perspired terribly from the choking, and that after he felt better the dentist and nurse looked for the teeth, looked on the floor, picked up the forceps, and again looked on the floor to see if the teeth could be found; that one of the nurses took part in trying to find the tooth in the boy's throat; that she ran her finger down his throat once; that there was nothing else done by either the dentist or the nurse with the patient relative to locating the tooth after the teeth were extracted, other than looking on the floor and running their fingers down his throat, and raising his head and wiping his face two or three times.

She further testified that she returned to the office of the dentist in April, 1920, to see about having some X-rays taken. She had X-rays taken in May, 1920, by a Dr. Peters, which showed a foreign body.

In the complaint several acts of negligence were charged. Negligence in the extraction was one of them. Instruction No. 40 was correctly given as applied to that matter. Negligence in looking for the tooth and in failing to recover it was also charged in the complaint, and some of the evidence

tending to support that charge has been referred to. As to these matters, instructions Nos. 27 and 28 would apply. There is not such a contradiction between No. 40 and Nos. 27 and 28 as would leave the jury in doubt as to which rule to follow. The instructions taken as a whole were correct statements of the law, and no error ·appears that would justify a reversal.

 The objection to the question put to the witness, Dr. Alice Smith, concerning her opinion as to what caused the attack of pneumonia for which she treated plaintiff in 1924 should have been sustained. It is apparent from the deposition of the witness that the opinion she gave was based on hearsay. She relied on information given to her by the boy's mother as to the presence of the tooth in the boy's lung. She could have been and should have been asked a hypothetical question as a medical expert, and then her answer would be proper. But the error in admitting this answer was not prejudicial, since testimony as to the position of the tooth in the boy's lung was given by several other witnesses.

 It is also claimed by appellants that there can be no recovery against Dr. Painless Parker as an individual, in any event. In support of this claim it is urged that the evidence shows that Dr. Parker was merely an employee of Painless Parker Dentist, a corporation, and, therefore, not liable for the acts of any other employee. If this were the true state of facts, we would agree, but it seems to us that under the evidence he was more than an employee. Dr. Parker was sworn as a witness in the case, and, among other things, testified that he had referred to himself for many years as "Painless" Parker, and that he was generally known by that name in a business way, and that he had his name changed from E. R. Parker to Painless Parker to protect his business, and also that he had a corporation formed for the same purpose. It is true that he also testified that he was not an officer or director of the corporation, but was its general manager. He claimed to be merely an employee, but it seems quite apparent from the evidence and from the reasonable inferences to be drawn therefrom, notwithstanding his protestations to the contrary, that to all intents and purposes he and the corporation were one and the same. It was his *alter ego,* and without his guiding

hand could not function. He caused the corporation to be formed; he was one of the incorporators; he was its general manager; with his knowledge and consent, his picture was on the windows and doors of the dental offices and on the literature of the corporation; he had charge of the personnel; he instructed the dentists employed as to the methods of the E. R. Parker system; he checked up at various times to see that they followed that system; he originated the system; and generally he had active supervision constantly over the affairs and the general business of the corporation. It would seem to require no further discussion on this point to determine that it is without merit, and that both the corporation Painless Parker and the individual Painless Parker are so related that they stand or fall together.

It is finally claimed that the court erred in giving certain instructions on the question of ostensible agency. The objection comes principally from the individual defendant, and in view of our conclusion as to the virtual identity of the parties, this objection is likewise without merit.

No prejudicial error appearing in the record, the judgment should be and it is hereby affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 28, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1930.