[Civ. No. 9039. First Appellate District, Division Two.—November 16, 1934.]

LILLIAN ROSS, as Administratrix, etc., Appellant, v. ARTHUR HIERONYMUS, Respondent.

 

Alfred Nelson for Appellant.

David C. Dutton and Lewis E. Lercara for Respondent.

STURTEVANT, J.—As administratrix of the estate of her deceased husband, the plaintiff commenced an action to obtain damages for malpractice. The defendant Arthur Hieronymus is a physician and surgeon. In her complaint the plaintiff joined as defendants several nurses who served the decedent during his last illness. Only Dr. Hieronymus answered and the action was tried before the trial court sitting with a jury. After all of the evidence had been received the defendant made a motion that a nonsuit be entered. The motion was granted and a judgment of dismissal was entered. The plaintiff made a motion for a new trial which was denied. From the judgment the plaintiff has appealed.

Shortly prior to November 6, 1929, John McDonald Ross was ailing with a carbuncle on the back of his neck. On the date last mentioned he went to the office of Dr. Hieronymus for treatment. He returned for treatment on the 7th, 8th and 9th of November. Whether he returned on November 10th was a disputed fact. He did not go to the defendant on the 11th, 12th and 13th days of November, but he did go on the 14th for a consultation only. On the 15th, under the defendant's direction, he went to a hospital where he was under the defendant's care until November 23d, on which date he died from septicemia resulting from the carbuncle.

In the plaintiff's complaint she pleaded the malpractice of the defendant, setting forth the facts in detail. In his answer Dr. Hieronymus denied all allegations of malpractice and at least attempted to plead the contributory negligence of the decedent and of this plaintiff.

On the trial of the case the evidence was not conflicting regarding the fact that Mr. Ross was afflicted with a carbuncle, that the disease increased as from the beginning, and that later septicemia developed and from that attack he died on November 23, 1929. In presenting her case the plaintiff called as a witness Dr. Hieronymus and other per-

sons and introduced evidence showing what treatment the defendant gave and directed. Later she called as her witnesses Dr. Herbert R. Smith and Dr. Frank T. Duncan, two physicians and surgeons practicing their professions in Oakland, the same place where the defendant maintains an office and practices his profession, and the place where Mr. Ross was treated by the defendant. From Dr. Smith and Dr. Duncan the plaintiff developed evidence that the treatment administered by the defendant was not such as would have been administered by one who possessed and exercised the degree of skill or learning ordinarily possessed and exercised under similar circumstances by the members of his profession in good standing in the neighborhood of Oakland. In other words she followed the rule stated in *Perkins* v. *Trueblood*, 180 Cal. 437 [181 Pac. 642]. In the introduction of his case the defendant took the stand as a witness in his own behalf. He also called as his witnesses Dr. Vernon G. Alderson, Dr. Harry J. Smith and Dr. Ergo Majors. From those witnesses counsel for the defendant introduced evidence which for the purposes of this opinion it may be stated controverted the evidence so introduced by the plaintiff.

The defendant introduced evidence to the effect that the plaintiff and her deceased husband were guilty of contributory negligence which proximately contributed to the development of septicemia and the death of the decedent. It will suffice to state that such evidence consisted of showing that the defendant, at an early date, advised the decedent to go to a hospital, to stop work, to rest, to give up a heavy diet, and proceed to live on a light diet; and, until November 15th, the decedent did not follow any of said directions. He also introduced evidence to the effect that on one or more occasions the plaintiff dressed the carbuncle and the manner in which she did so. In this connection he also introduced evidence as to the effect, in the judgment of medical experts, the acts of omission and commission on the part of the deceased and the plaintiff had in the development of the carbuncle.

In reply the plaintiff introduced evidence that the deceased was an able-bodied man working for wages, that he had a wife and seven children dependent on him for a living, and that the work which he did was not heavy physical work. She also introduced evidence of medical experts that none of

the acts of omission or commission on the part of the decedent and the plaintiff contributed proximately to the cause of death of the decedent.

The plaintiff earnestly contends that on the issue of malpractice on the part of the defendant, and on the issue of contributory negligence, while it must be conceded that the evidence was conflicting, nevertheless the case was not a proper one for the trial judge to order that a nonsuit be entered. The defendant answers this contention by asserting a nonsuit may properly be ordered when all of the evidence has been taken only when the judge would be compelled to set a contrary verdict aside as unsupported by the evidence. Continuing he claims that to warrant a court in granting a nonsuit at the close of all of the testimony it is not necessary that there would be an absence of conflict in the evidence, but to deprive the court of the right to exercise this power if there be a conflict it must be a substantial one. (*Estate of Baldwin*, 162 Cal. 471, 473 [123 Pac. 267].) ▆ The plaintiff concedes the rule to be as stated and quotes in reply: "But it is equally well established by the foregoing authorities, and many others that could be cited, that a directed verdict in favor of a defendant is unauthorized where there is substantial evidence, as we find exists in the case at bar, tending to prove in favor of plaintiff all of the controverted facts necessary to establish his case." (*Valdick* v. *LeClair*, 106 Cal. App. 489, 499 [289 Pac. 673].) We think the reply is entirely sufficient. In other words, we think that there was substantial evidence tending to prove in favor of plaintiff all of the controverted facts necessary to establish her case. Bearing in mind that the plaintiff's cause of action sounds in malpractice, and bearing in mind also that in the presentation of such an action the question "as to what is or is not the proper practice is uniformly a question for experts and can be established only by their testimony" (*Patterson* v. *Marcus*, 203 Cal. 550 [265 Pac. 222]), liberality in granting a motion for a nonsuit is not extended. In *McGraw* v. *Kerr*, 23 Colo. App. 163 [128 Pac. 870], the court was considering an alleged case of malpractice in which the setting of a broken arm was involved. At page 874 (128 Pac.) the court said:

"2. Appellant requested an instruction to the effect that in considering whether the defendant, in his diagnosis, care,

and treatment of plaintiff's injured arm, exercised ordinary care and skill, the jury could not set up a standard of its own, but must be guided in that regard solely by the testimony of physicians; and that, if they were unable to determine from the testimony of physicians what constituted ordinary care and skill under the circumstances of this case, then there was a failure of proof upon the only standard for their guidance, and the evidence would be insufficient to warrant any verdict for the plaintiff.

"The authorities are practically uniform in holding, and counsel for plaintiff admits, that as to what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts, and can be established only by their testimony. But counsel for appellee attempts to draw a distinction between the character of testimony necessary to establish a standard of proper treatment, and a standard of what constitutes ordinary care and skill. We perceive no difference. The instruction goes no farther than to direct the jury in what is admitted by plaintiff's counsel to be the law. In either case the standard must be established by the testimony of experts. In *Jackson* v. *Burnham, supra,* (20 Colo. 532 [39 Pac. 577]) the court, by Mr. Justice Goddard, said that, in order to determine whether the defendant (a surgeon) exercised ordinary care and skill in examining the case, as well as in applying remedies thereafter, resort must be had to the opinion of experts, based upon the ultimate facts as the jury may find them established by the weight of the evidence. The only rule asked for in the language of the instruction now under consideration is that, upon the question of standard, by which the jury must be guided in arriving at a conclusion as to what constituted care and skill, the testimony of experts (in this case, the physicians) alone must be considered. The standard, and the testimony by which it can be ascertained, are the only matters involved. Upon that question we think there is no contrariety of opinion. If no standard was established by the testimony of physicians, then the jury had no standard. This does not militate against the right of the jury to decide between conflicting testimony of different physicians or experts on the question of a standard; it only goes to the extent that if in doubt upon any matter necessary to enable the jury to say that a standard has been fixed

for its guidance by the testimony of such qualified witnesses, then it cannot from other and incompetent evidence, or without evidence, raise a standard.

"We think that refusal to give this instruction, and the giving of the instruction as modified by which the jury was permitted to find such standard from all of the testimony, both competent and incompetent as to that question, constituted error." In *Krueger* v. *Chase*, 172 Wis. 163 [177 N. W. 510], the plaintiff based her charge of malpractice on the fact that the practitioner, while in the act of extracting a tooth allowed the filling and a part of the tooth to drop into the plaintiff's throat and pass into her lung. The trial court followed its own judgment and opinions and brushed aside the opinions of the experts. At page 512 (177 N. W.), the court said:

"The trial court was of the opinion that whether Dr. Hickey was negligent in permitting the escape of the particles of tooth and filling into the plaintiff's throat was not to be determined in accordance with the practice as established by the testimony of witnesses in the vicinity in which Dr. Hickey practiced, but was a matter which might be determined from common knowledge. He regarded the escape of the foreign matter into the plaintiff's throat as a physical fact, about which any ordinarily intelligent individual can form as correct a judgment as could the experts. In this we think the trial court was in error." (Compare *Nelson* v. *Painless Parker*, 104 Cal. App. 770 [286 Pac. 1078].) In this state we find no authority directly in point. *Winthrop* v. *Industrial Acc. Com.*, 220 Cal. 114 [29 Pac. (2d) 850], and *Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118 [29 Pac. (2d) 852], come the nearest to being in point, but they are not. However, we consider both decisions as supporting all we have said. In *Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224, on page 228 [263 Pac. 799], Mr. Justice Seawell, speaking for the court, said: "Unless it can be said that, as a matter of law, no other reasonable conclusion was legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal, or a trial court to set it aside, it must be held that the court erred in taking the case from the jury and itself rendering the decision." In the instant case there does not appear to

be anything to take it out of that rule. True it is that much of the evidence was given by experts. To the layman some reasons given and some opinions expressed might not have been convincing—they might have been quite to the contrary. However, these matters were for the jury. *Sheldon* v. *Wright*, 80 Vt. 298 [67 Atl. 807], was a malpractice case which was decided by the Supreme Court of Vermont. In that state the rule also obtains that what is or is not proper medical treatment is uniformly a question for experts and can be established only by their testimony. As to how such evidence should be treated by the jury was the subject matter of an instruction. Among other things it contained a sentence, ''But you are not bound to accept the statements or conclusions of expert witnesses.'' Commencing on page 814 (67 Atl.) the court said: ''But this sentence in its connection was in no way misleading. The conclusions of the experts were conflicting. If some were right, others were necessarily wrong. The jury were left to determine the matter upon the whole evidence, and this course was entirely right, as, in any view, the strictly expert evidence was without value, except as it was based upon facts which the jury might find from other evidence. The ordinary witness testifies as to facts about which the jurymen have or should have no knowledge of their own; but, nevertheless, they must apply their own good judgment to the testimony of such witnesses in determining what facts are proved. The expert in a case like this testifies to facts of a different class, or to the interpretation of facts, matters, for the most part, about which the jury are not expected to have knowledge of their own, but nevertheless they must apply their sound judgment to the comparison, sifting and weighing of such testimony and to a consideration of the sources from which it comes. . . . The charge presents the sound and sober view that the jury are to hear and weigh the expert testimony, however conflicting it may be, with the same feeling of duty and responsibility as rests upon them in hearing and considering the other testimony, to the end that they may get from it all the aid it can give them in coming to a right decision of the very case in hand. It is believed to be the law that there cannot be a recovery for malpractice in the case of an operation like this under consideration without medical expert testimony tending to show lack of the requisite skill and care on the

part of the defendant. But there may be such testimony, and yet the witness giving it may display such a lack of candor, such feeling, such advocacy, he may testify in such a way as to facts which are matters of common knowledge, or which are established by the testimony of nonexpert witnesses, that the jury feel that they cannot in good conscience accept his strictly expert testimony.'' In other words, the question under consideration is primarily for the jury and which that body must determine. It is not for the courts, either the trial court or a court of review, to substitute the opinion of a layman on a matter that is a special subject on which medical practitioners are specially informed. (*Krueger* v. *Chase*, 172 Wis. 163 [177 N. W. 510].) But, if in a given case, such expert opinion evidence on a material issue is absent, then the plaintiff has failed to make out a ·case (*Callahan* v. *Hahnemann Hospital et al.*, 1 Cal. (2d) 447 [35 Pac. (2d) 536]), and in such a case a directed verdict is proper. (*Linn* v. *Piersol*, 37 Cal. App. 171 [173 Pac. 763].) In the instant case our attention is not called to any gap in the evidence tendered by the plaintiff, and we have noticed none. While it might have been burdensome for the jury to weigh and estimate the value of the respective opinions expressed by the experts, nevertheless the duty rested on the jury and not on the court to do so. It follows that the trial court erred in directing the verdict.

The judgment appealed from is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 15, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1935.