MARTIN O'CONNOR, ADMR., Appellant, v. THE CHICAGO, ROCK ISLAND, AND PACIFIC RAILWAY Co., Appellee.

**Railroads:** NEGLIGENCE: PROXIMATE CAUSE: EVIDENCE. In an action for the death of a brakeman, proof of a defective condition of the car and the death of the intestate is insufficient to take the case to the jury; it must also be shown by a preponderance of

the evidence, either direct or circumstantial, that the defect complained of was the proximate cause of the death. Evidence reviewed and held insufficient to connect the injury with the alleged negligence.

*Appeal from Jasper District Court.*— HON. B. W. PRESTON, Judge.

TUESDAY, FEBRUARY 13, 1906.

ACTION at law to recover damages for the death of John O'Connor a brakeman in the defendant's employ, due, as is alleged, to defendant's negligence. The answer was a general denial. At the conclusion of plaintiff's evidence the trial court directed a verdict for defendant, and plaintiff appeals.— *Affirmed.*

*Sullivan & Sullivan* and *F. H. Clements,* for appellant.

*J. L. Parrish, C. O. McClain,* and *Carroll Wright,* for appellee.

DEEMER, J.— Three specifications of negligence are made against the defendant: First, it is contended that the brake on top of the box car upon which plaintiff's intestate was riding was in a loose, defective, and unsafe condition; second, that there was a trapdoor on top of the car, which was raised above the level of the roof some two or three inches; and third, that the ladder on the side and end of the car was defective, in that the stirrup was bent and curved, and not in proper place or condition.

There was evidence to sustain each and all of these allegations of negligence; although as to the third there is no testimony whatever to show that it had anything whatever to do with the death of O'Connor. The real question in the case is: Was there enough testimony to take the case to the jury on the question of the other defects being the proximate cause of the death of plaintiff's intestate?

The law on this point is well settled. Proof of the defective condition of the car, and of the death of the intestate, due to his being run over by the car, is not sufficient to take the case to a jury. In other words, the burden of proof was upon plaintiff to show causal connection between the alleged negligence and the injury complained of. And where the proof is equally balanced, or the facts are as consistent with one theory as another, plaintiff has not met the burden which the law casts upon him. Of course, plaintiff is not required to produce more than a preponderance of the testimony; but if his evidence does no more than create a surmise or conjecture, he cannot recover. Proof of causal connection may be direct or circumstantial, but the evidence must be something more than consistent with plaintiff's theory as to how the accident occurred. These rules are well supported by our cases. *Asbach v. R. R. Co.,* 74 Iowa, 251; *Wheelan v. R. R. Co.,* 85 Iowa, 167; *Rhines v. R. R. Co.,* 75 Iowa, 597.

With these for our first premise, we now go to the testimony to discover if plaintiff has made this causal connection, or produced sufficient evidence to take the case to a jury on this proposition. In our analysis of the testimony we shall, of course, take that version of it most favorable to plaintiff's case.

The car upon which plaintiff was seen but a short time before he was found under the wheels thereof was what is known as a M. D. T. Refrigerator car. It was part of a train bound from Eldon to Valley Junction, and was to be set out at the town of Evans, that it might be taken to Knoxville, its destination. After it had been detached from the train and started down the switch track at Evans, it was the duty of John O'Connor to board it and to set the brake, so that it might not be blown or ran upon the main track. In passing upon the switch track the car was moving in an easterly direction. There were two ladders upon the car, one on the northwest corner, and the other on the

south side of the east end.   The train arrived at Evans at about 11:15 p. m., the night was dark and a drizzling rain was falling.

The conductor of the train, who was the last man to see O'Connor alive, testified that he (O'Connor) climbed up the back ladder on the north side of the car, and that he saw him on top of the car just after he had straightened up after climbing the ladder; that he saw him on top of the car, and that he had his light with him.   Deceased at that time was at the west end of the car.   The next time O'Connor was seen by any living witness was after the car had passed over him; one half of his body lying outside the south rail, and the other half between the rails.   On the first and second wheels from the east on the south side of the car pieces of O'Connor's clothing were found.   Plaintiff claims that O'Connor fell from the east end of the car, and that the proximate cause of his fall was the defective brake or the presence of the raised trap-door.   The brake rod extended from the bottom to some distance above the top of the car, and on the top of the rod was the brake wheel.   The rod was south of the center of the east end of the car, and the defective ladder was south of the brake rod, but on the same end of the car.   The brake rod was fastened to the top of the car by a clamp through which the shaft passed. We quote the following testimony with reference to the condition of this brake:   " As far as I could see (I was on top of the car) the brake shaft was attached to the car, with a clamp and three wood screws.   There were two wood screws in the end of the car that held the clamp.   The brake was not otherwise fastened to the end of the car.   It was attached at the bottom and fastened at the top by a clamp.   The brake shaft stood up and down.   The clamp was held by three wood screws, one at each side and one on the top.   The one on top would be screwed down on the top of the car, and the two others at the end of the car." After the accident the car was examined, and a witness said:

" The wood of the car around where the screw went was so decayed and rotten, they would not hold, but took them out with his fingers. The casting was attached to the car with one wood screw. It stuck up about an inch." Another witness said that the brake, on account of its defective condition, could not be set.

The next morning after the accident the brake was examined, and the clamp was found in its proper position, and the bolts or screws were where they belonged. They were loose, however, and one of them was taken out by one of the witnesses present. These bolts or screws were of iron three-fourths of an inch in diameter, and three and one-half inches long. The bolt or screw on top of the car was sticking up about an inch, and a piece of cloth from a coat said to have belonged to deceased was found on the head of the bolt. The other bolts at the end of the car were in place, although one of them was loose, and was taken out while some experiments were being made with the brake. According to one of the witnesses, who was not disputed, the runway on top of the car was in poor condition. There was nothing to indicate that the brake or clamp had been moved or used save as we have stated; and the conductor heard no noise which indicated that deceased was attempting to set the brake at any time.

The only other circumstance which appellant relies upon as tending to show that the accident was due to the defective brake or trap-door is the following, which we take *verbatim* from the record:

I found a piece of cloth; I do not remember just exactly, about two inches wide and two inches long, and fastened to the wood screw on top. I put it in my pocket at the time, and compared it to his coat. It was a piece of the lining of the coat, and I saw fresh scratches on the end of the car, something like two or three feet down the brake. I tried to. set the brake. I tried it two or three times, and every time I tried, when I let loose, it would fly off again.

There were marks on the end of the car that looked like the print of nails. They looked fresh to me. The marks were from the top of the car, down to within a foot of the bumpers. This was the next morning after he was killed. The body was still at the depot. We picked his shoes up and took them home with us. They were a heavy pair of shoes, half-soled with tacks.

These facts we are asked to say were sufficient to take the case to the jury on the theory that they show the defective condition of the brake or of the trap-door to have been the cause of John O'Connor's death. It is not seriously contended, however, that the condition of the trap-door or of the ladder had anything to do with the accident, but much is claimed for the circumstances quoted as tending to show that the defective condition of the brake caused the death of plaintiff's intestate. It should be remembered that the night was dark, that it was raining, and that the top of the car was slippery. The runway was also in a poor, if not defective, condition. For five minutes before the accident no one saw the deceased or heard anything from or of him; but he must have passed from the west to the east end of the car, and there either fell from the top, or, in attempting to descend the ladder, slipped and fell under the wheels on the south side and at the forward end of the car. As to how he came to be in front of the car as it passed eastward is left to surmise and conjecture. There are but two facts which it is claimed tend to show that the brake had anything to do with the matter; one, the finding of the piece of cloth at or near the bolt through the clamp on the top of the car, and the other, the scratches on the end of the car. But the finding of the piece of cloth is just as consistent with the theory that deceased in some manner slipped and fell, as that he had hold of the brake; indeed, it is more so, for, when the brake was examined the next morning, the screws, although loose, were in place, and there was no evidence that they had given way so as to allow the

brake rod to move from the car, and thus unexpectedly change the center of gravity. The play in the brake rod with the loose screws was but one-quarter of an inch, and there is no evidence that the deceased ever had hold of the brake. If he had had hold of the brake, and lost his balance because of the play of the rod, he would naturally have been thrown away from the car, and under such circumstances we would not look for any pieces of his clothing close up to the rod. The presence thereof indicates that he must in some way have come in contact with the protruding bolt. Had he slipped and fell from the end of the car over this bolt, we should expect to find some of his clothing there. But with the wheel on top of the brake rod, which would naturally keep his body away from the rod, if he had hold of the wheel, it is hardly likely that pieces of his clothing would be found on the bolt close to the rod if he had been thrown by the defective brake from the top of the car.

As to the scratches upon the end of the car, little dependence is placed upon them by plaintiff's counsel. We have quoted *verbatim* all the testimony with reference thereto, and find nothing in support of plaintiff's theory. True, there were fresh scratches on the end of the car near the brake rod, and it appears that the shoes of the deceased had been half-soled with tacks. But the nature of the scratches is not shown, nor is there any evidence that they could have been made by O'Connor's shoes. Indeed, the nature of the tacks on his shoes is not shown. There is here too much of inference upon inference to justify the use of this testimony as showing that the brake was the cause of the accident. Plaintiff's counsel are driven to too many theories as to how this sad accident occurred, and none of them seem to be supported by that preponderance of the evidence which is required in such cases. The exact cause of this accident can never, in the nature of things, be shown; but it is just as reasonable to suppose that because of the defective condition of the runway, and the slippery condi-

tion of the entire roof of the car, that deceased lost his balance, and fell off the end, as it is to assume that the condition of the brake had anything to do with it.    In such cases there can be no recovery, for defendant should not be held responsible, in the absence of a showing that the defects in its appliances were the approximate cause of the accident. See, as supporting these views, *Larson v. Railroad,* 43 Minn. 423, (45 N. W. 1096); *Louisville R. R. v. Binion,* 98 Ala. 570 (14 South. 619); *Smith v. Railroad,* 118 N. Y. 645 (23 N. E. 990).

The ruling on the motion to direct seems to be correct, and the judgment is therefore *affirmed.*