GEORGIANA YARRINGTON, BY CHARLES YARRINGTON, HER NEXT FRIEND, AND CHARLES YARRINGTON, INDIVIDUALLY, PLAINTIFFS, v. WILLARD O. PITTENGER, DEFENDANT.

Decided February 26, 1930.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the rule, *McDermott, Enright & Carpenter (James D. Carpenter, Jr.,* of counsel).

*Contra, Theodore D. Parsons (Frank J. McCarthy,* of counsel).

PER CURIAM.

This case was tried in the Monmouth Circuit. There was a verdict of $4,500 in favor of the minor plaintiff, and a verdict for the minor's father, for $1,000.

This is a second trial of the cause. At the former trial the minor plaintiff received $5,000, and the father $1,200.

The gravamen of plaintiffs' action was malpractice on part of the defendant, a dentist, who in extracting some teeth of the minor plaintiff, negligently permitted a root of a tooth which he was extracting to enter into the lung of the plaintiff, where it embedded itself, so that an operation had to be performed, subsequently, to extract it.

In extracting teeth, such as the defendant was called upon to perform in the instant case, the proof tends to show that the ordinary and general practice is for a dentist to provide throat sponges, so as to prevent the teeth or any part thereof to be swallowed into the lung or stomach. It was the failure to have taken this ordinary precaution to use throat sponges while extracting the minor plaintiff's teeth that caused the mischief and the injury.

It appears from the testimony in the cause that the minor plaintiff was put under the influence of an anæsthetic; that it took the dentist about twenty minutes to perform the work; that the dentist failed to use any throat sponges so as to prevent the entry into the throat of any part of the teeth being extracted.

There was also testimony coming from experts that if throat sponges are used, and properly adjusted, that it is very unlikely for a tooth of any part thereof to go down into the lung or stomach.

There is also testimony in the case of circumstances from which the jury had a right to infer that the dentist knew he had drawn out a root of the tooth, since he testified himself that he looked for it on the floor but could not find it; that he glanced at the rest of the fragments on the tray but did not trouble himself to find out whether or not the root had been extracted.

It further appeared in the case, that the plaintiff began to cough, and the defendant passed the matter over lightly.

The defendant, as dentist, held himself out to the general public that he possessed the ordinary skill required of a general practicing dentist, in the extraction of teeth.

As has already been said, and as it appears from the testimony in the cause, the general practice in the extraction of teeth is to use throat sponges for the very purpose of preventing a patient, under the influence of an anæsthetic, from swallowing or permitting a tooth or the root of a tooth to pass into the lung or stomach.

On the question whether the defendant did use throat sponges there is some conflict in the evidence. The defend-

ant insists that he did use throat sponges, and on the other hand, on part of the plaintiff, it is claimed that no throat sponge or any other precaution was used to prevent a tooth or root thereof, while being extracted to pass into the lung or stomach.

The fact that the defendant himself testified that he missed a root of a tooth and that he looked around on the floor for it, and glanced at the tray containing the fragments and did not find it, seems to us, were circumstances from which a jury could reasonably infer that no throat sponge or other precaution was used by the defendant to prevent foreign matter to enter into the plaintiff's lung or stomach, while the teeth were being extracted.

It is next said that the verdict is excessive. There is some testimony that the injury resulting in the operation impaired the minor plaintiff's health to some extent, but from a careful consideration of the testimony relating to the pain and suffering she endured, and the consequences ensuing from her injury, we think that the verdict is excessive, and have reached the conclusion that if the female plaintiff is willing to accept the sum of $3,000, in lieu of the $4,500 awarded to her by the jury, the rule to show cause will be discharged, but if she is not willing to do so, the rule to show cause will be made absolute, as to her. The verdict obtained by the father for $1,000 will not be disturbed, and the rule to show cause as to him will be discharged, with costs.