JESSE E. WHETSTINE, Appellant, v. DR. EDWARD L. MORAVEC, Appellee.

No. 44945.

APRIL 2, 1940.

G. P. Linville and C. W. Meek, for appellant.

Barnes, Chamberlain & Hanzlik, for appellee.

BLISS, J.—On October 22, 1937, the plaintiff, an automobile repairman, 50 years old, brought this action against the defendant, a dentist of long experience in his specialty of extracting teeth—an exodontist—by filing his petition alleging: "That on or about the 3rd day of July, 1936, the plaintiff went to the office of the defendant for the purpose of having certain teeth extracted, and the defendant accepted plaintiff's employment of him to extract plaintiff's said teeth and undertook to perform same, and did then and there place the plaintiff under a general anesthetic and did extract said teeth but did so so carelessly, negligently, and unskillfully that the root of one of said teeth so extracted was permitted to pass down the windpipe and lodge in the right lung of plaintiff; that though the plaintiff suffered much pain and distress from his lungs he did not know the cause thereof for a period of nine months and three days, when, because of the cells of the tissue of said right lung being broken down at the location of said root of said tooth, the plaintiff in a fit of coughing from irritation in said lung coughed up the said root of said tooth. That the dental operation in the extraction of plaintiff's said teeth was wholly and completely under the management of the defendant, and that said accident to the plaintiff was such that in the ordinary course of dental practice would not have happened had the defendant and his servants exercised the usual and proper care in extracting plaintiff's said teeth."

The petition contains no other, or specific, grounds of negligence, and the action, as pleaded, is based upon general allegations of negligence. Defendant's answer denied all allegations

other than those respecting the extraction of the teeth as a dentist at the time alleged. These allegations he admitted.

At the close of plaintiff's testimony, the defendant moved for a directed verdict in his favor, which motion was granted. This motion in substance stated: (1), the plaintiff failed to establish any negligence charged which caused the injury; (2), the plaintiff failed to establish any malpractice or lack of care of defendant which was the proximate cause of the injury; (3), the plaintiff attempted to establish negligence by the rule of res ipsa loquitur, which has no application to a malpractice suit; (4), (5), the plaintiff relies upon circumstantial evidence, and has failed to eliminate other possible and reasonable causes of the injury; (6), (7), the plaintiff did not show that defendant failed to use that degree of skill in the extraction of the teeth ordinarily and generally used by practitioners in Cedar Rapids and vicinity, under like circumstances; (8), the court would be required to set aside a verdict against the defendant as contrary to the evidence.

Appellant has assigned errors for the sustaining of the motion upon the various grounds thereof.

This appeal presents to us for determination two questions or propositions: First, did the record justify the submission to the jury of the issue that the defendant was negligent as charged? Second, if the defendant was negligent as charged, was that negligence, or its result, the proximate cause of plaintiff's injury?

We will discuss the second question first because it involves a statement of the facts, a knowledge of which is essential to a proper consideration of both questions.

I. The plaintiff had followed his trade as barber for a number of years, but being of a mechanical turn of mind, he had given his attention somewhat to matters of that kind, and later took up the work of an automobile mechanic as his regular occupation. He had been so employed, steadily for more than seven years on July 3, 1936. On that day, about midafternoon he left his work to go to the defendant's office to have six teeth extracted—four above and two below from his right jaws. The

defendant had extracted eight of the plaintiff's teeth in 1934, and, two or three years previous to that time, had pulled the roots of a tooth, which the chewing of barley as a boy, and decay, had destroyed. Other dentists, in earlier years, had extracted perhaps a half dozen teeth. The roots and sockets of his remaining teeth were affected with pyorrhea, and because of their general bad condition, the defendant advised him to have them all removed. The plaintiff declined to have his front teeth pulled, and pointed out the six which he wished to have extracted. At the time of the trial the plaintiff had but ten teeth, all in front. No person was in the defendant's office other than he and the plaintiff. The plaintiff seated himself in the dental chair and the defendant gave him a general anesthetic, and when the plaintiff recovered consciousness, the six teeth had been extracted. The defendant removed one or two pieces of teeth from the gums, and the plaintiff left for his home about 4 o'clock in the afternoon. He felt a heaviness in his right chest when he first came from under the anesthetic, which became more noticable on reaching home, as though he were taking cold ''or something.'' This heaviness kept getting worse. It was more of an ache than a pain. He began coughing that night. The coughing and pain increased in intensity and has never left him. The teeth extraction had been on Friday, and he attempted to go back to work the following Monday. Before quitting time in the afternoon he returned to the defendant's office and had him remove two or three pieces of teeth from his gums. The dentist at this time told plaintiff that he had a hard set of teeth to pull and that he broke them up quite badly. On the Friday following the extraction, Dr. Hersch came to his home and treated him, but he received no relief. Coughing spells continued day and night. Dr. Crawford treated him for some time, and later Dr. Artis, but neither helped him. Dr. Rice, an osteopath, examined him. Dr. Erskine took X-ray pictures of his right lung in September 1936. He continued at his work fairly steadily until the first week in December 1936 when his condition rendered further work impossible. He began coughing blood in the latter part of December 1936. Severe hemorr-

hages from the lungs followed. He went to the sanatorium at Oakdale in January or February 1937. There, Dr. Webb took X-ray pictures of his lungs. Dr. Houser treated him on his return from the sanatorium and placed him in St. Luke's Hospital for 10 days, and other X-ray pictures were taken in the latter part of March. He arranged to be taken to the University Hospital, at Iowa City, on April 6, 1937. He was a man of rather slight build, with a normal weight of around 145 pounds. That was his weight at the time of the teeth extraction. His weight decreased to 85 pounds on April 6, 1937. About 7 o'clock in the morning of that day, while his mother was feeding him grapefruit as he was reclining in bed, he choked and strangled, and after a very violent spasm of coughing, he expectorated a quantity of sputum, mucus and blood from his lungs, into a can kept at the bedside for that purpose. He at once told his wife to examine the discharge as he felt as though he had coughed up something hard like a scab—that he felt it when it came loose. She immediately poured the contents on a paper and found there the root of a tooth. The plaintiff, his mother, wife, son, and daughter were all present in the home, and they testified to this occurrence. His sister, who had planned to accompany him to Iowa City that morning, was at the house about 8 o'clock. His minister called at the home that morning, knowing that the plaintiff was being taken to Iowa City. The root of the tooth was shown to him. The plaintiff had been a regular attendant at church services on every Sunday morning, evening, and Wednesday night. He was an usher in the church, and attempted to perform these duties during the summer and fall of 1936, but his condition of health forced him to quit. The minister called at the home from time to time, and testified to his rapid physical decline after the teeth extraction, and to coughing spells that were almost paroxysms. He was taken to Iowa City in an ambulance that day. Dr. Evans, an ear, nose, throat, and lung specialist gave him attention. X-ray pictures of the lungs were taken. Plaintiff was then coughing copious amounts of vile sputum. His breath was foul. There was tenderness and pain in the right chest.

Examination and the pictures indicated an inflamed, abscessed, and consolidated condition in the right lung. He was kept in the hospital 10 days. He had severe hemorrhages from the lungs. He came back to the hospital from time to time for a year to receive X-ray treatments to stop the bleeding in the lungs. The treatment was ineffective. The bleeding was from the right lower bronchus. That is where the abscess was. Later the plaintiff was removed to the surgical ward, where an operation was performed, October 15, 1938, to sever the phrenic nerve to the right diaphragm. This operation destroys the function of the diaphragm near the lower right lobe, and the surgical interference with that nerve is a permanent paralysis of the right half of the diaphragm and prohibits complete expansion or inspiration, and there is no muscular contraction to permit forcible coughing. It left the right lung somewhat collapsed and the right shoulder lowered. Dr. Evans weighed the plaintiff on April 6, 1937, in August 1937, and in August 1938, and his weights on those days were respectively, 85 pounds, 140 pounds, and 131 pounds.

Dr. Evans testified:

"There is bacteria on human teeth. When once introduced into a cultural media present in tissues so very full of blood as the lung is, and the bacteria becomes active, it may produce very acute inflammation, bronchitis; pneumonia; unless interrupted it will go into an abscess."

Workmen, who labored side by side with the plaintiff for years, testified to his general good health, his steady employment, to freedom from coughing and any appearance of lung trouble or easy tiring, and of any complaints of the plaintiff in regard to these matters, prior to the first week in July 1936. These same workmen testified to his coughing, his loss of weight, general physical decline, easy tiring, complaints of ill health, complaints of pain in his lung after the extraction of his teeth, until the time came that he was unable to continue at work. Others gave similar testimony. He earned from 60 to 65 cents an hour. In answer to an hypothetical question based upon

matters herein set out, Dr. Foster, who had also attended plaintiff, testified that he believed the lung condition of the plaintiff was the result of the tooth in his lung. Dr. Prouty, a specialist in X-ray diagnosis, examined the various pictures or skiagraphs which had been taken of plaintiff's right lung and testified as his witness. He had taken a posteroanterior picture of plaintiff's right lung at his office, on August 25, 1936. This showed nothing unusual and had no cloudy portions in it, although he testified that a foreign object might be observed in a lateral picture, which would not be disclosed in a frontal picture of this kind, where it might be obscured by other bony structures. Most of the pictures showed a consolidation or density of the tissues at the base of the right lung. Of Exhibits 3 and 4, lateral pictures taken at St. Luke's Hospital on March 25, 1937, prior to the expectoration of the tooth root, he testified:

"And in this film we saw a shadow, a small shadow of extra density, which, when asked if it might be a foreign body, we said it could be. * * * It is in the region of the right posterior or descending bronchus, or the right descending branch of the posterior portion of the right lung. I have now made a hole by means of a pin immediately to the back of the possible foreign object on Exhibits 3 and 4. Exhibits 5 and 6 are front and back pictures. They were also taken at St. Luke's Hospital. In examining them I do not find the same possible objects that I find in Exhibits 3 and 4. In the film known as Exhibit 4, which is a side to side X-ray, I see in the back portion, lower portion of the lungs, areas of infiltration; and in the region of the posterior branch of the descending bronchus there is a shadow of increased density, which may or may not be a foreign body. That is a separate density from the first density I spoke of—the consolidation or inflammatory condition. It could be areas of increased density from calcification, it might be fibrous, or superimposition of thickened bronchi, or there are a number of things it might be. I don't make a positive diagnosis of any one of these possibilities."

He testified that Exhibits 10, 11, 12, 13, 14, and 15, all taken at the University Hospital, after the alleged coughing up of the root, "all show a consolidation in the lower part of the right lung, which might be due from tumor, lung abscess, pneumonia or an infection." It will be noted that in these later pictures he observed "no shadow of increased density" which appeared in the lateral pictures taken at St. Luke's Hospital prior to April 6, 1937, although Exhibits 10 and 15 were also lateral pictures. Under this record there is substantial evidence to warrant a jury in finding that the cause of plaintiff's injury was the presence of the root of the tooth in his right lung.

The appellee, however, contends that the plaintiff failed to eliminate other possible and reasonable causes of the injury. What were the other causes suggested by the appellee? He urges that there is no proof that the object alleged to have been coughed up on April 6, 1937, and placed in the vial, and introduced as Exhibit 1, was the root of a tooth pulled on July 3, 1936, or even the root of a tooth. It is true that no doctor, dentist, or other competent expert testified that it was the root of a human tooth. But six or more lay witnesses so testified. Certainly the root of a human tooth is not an object of such substance, appearance, and unfamiliarity, that the opinion of a layman as to what it was should be disregarded as of no evidential weight or value whatsoever. Basing his statement upon the testimony of Dr. Prouty that the shaded portion of some of the X-ray films could be caused by calcification of the tissues, or scar tissue, counsel for appellee suggests that the object might have been a calcareous deposit. Under the doctor's testimony that was a possibility, but hardly a probability. After the root had been coughed up, the appellant's wife called the appellee, and he came to her home. The appellant showed the root to the appellee, and the latter took the root and made an outline of it on a piece of paper. He looked at appellant's teeth. He had some familiarity with them. If this object had appeared to his trained eye and practiced observation as a calcareous deposit, or something other than the root of a tooth

from appellant's jaw, he would hardly have said to the appellant on leaving "we will see you through all this."

Appellee's counsel suggests that no one testified that they saw the root when it was spat into the can. To have seen it in the bloody mass of sputum would have been an impossibility. Suggestion is made that the appellant may have unknowingly sucked the root into his windpipe prior to July 3, 1936, or a piece of tartar from a tooth, or a piece of his gums infected with pyorrhea. Objects of that kind do not pass unknowingly into the windpipe unless the person is unconscious in general anesthesia. Another alleged cause of the lung trouble was the fact that appellant, while a barber, and occasionally afterwards sometimes resilvered mirrors; and stated that if the solution was too strong, or there was not proper ventilation, there might be fumes arise, but there is no intimation that he failed to take these proper precautions. Furthermore he had done none of this work for several years and there is no evidence nor inference that he ever suffered on account of it. After July 3, 1936, and during the time he was consulting various doctors in search of relief, he discussed with some whether the air in his place of employment might not be fouled with monoxide gas. There was no evidence that such was the fact. Some 18 or 20 years before he had been struck in the abdomen on the right side, "quite a ways below" the base of the right lung, with a piece of wood. An abdominal operation was necessary to relieve him. Appellee's counsel suggests that a bone splinter resulting from this injury might have lodged in the right lung. This is pure conjecture without the slightest basis of fact or of reason for it. There was testimony that an abscess of the lungs might be caused by almost any infected object which entered them. Granting this is true, there was no support for any such assumption. Fifteen years before the trial, Dr. Foster had treated him for sinus trouble. He had no treatments nor sinus trouble after that. We may have overlooked other suggested causes, but we are certain that there were none that could be classed as a probability, or that had any reasonable foundation.

■ The burden was upon the plaintiff to show causal connection between the negligence claimed and the injury. That is, that the cause was proximate. Both negligence and proximate cause are questions of fact for the jury if the evidence is of sufficient weight and character to warrant their submission. In a civil case they need be established only by the preponderance or greater weight of the evidence, and not beyond a reasonable doubt. And this is true whether the testimony be direct or circumstantial. No different rule is applied in the establishment of these facts than is ordinarily applied in the establishment of any other fact in a civil action. The rule respecting the quantum of proof necessary to establish a fact where the evidence is circumstantial has been variously stated by this court, but uniformly it has been to the same effect.

Rather than attempt to restate the rule we call attention to a few expressions on the subject. In Woodward v. Chicago R. I. & P. R. Co., 193 Iowa 516, 526, 185 N. W. 978, 982, is this language:

"It is our conclusion, and we hold, that, notwithstanding the fact that the record fails to show direct proof of a causal connection between the accident and the negligence charged, the proven facts and circumstances are such as to justify a reasonable inference that the negligence of the appellant was the proximate cause of the injury. This is all that the law requires."

As stated in McGee v. Jones County, 161 Iowa 296, 300, 142 N. W. 957, 959, 48 L. R. A., N. S., 141:

"If the circumstances proven were such as to render this reasonably probable and more probable than that it happened owing to some other cause, the jury was justified in so finding." In Tisher v. U. P. R. Co., 173 Iowa 567, 570, 155 N. W. 975, 976, we said: "It must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence." In Hall v. C. R. I. & P. R. Co., 199 Iowa 607, 621, 199 N. W. 491, 496, the

court said: "Some of the cases put it this way: that the rule should never be extended so as to result in a failure of justice, where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than the other."

Without further quotation we merely call attention to some of the numerous cases in which the same rule is stated. See Breen v. Iowa Cent. Ry. Co., 163 Iowa 264, 272, 143 N. W. 846; Thompson v. Anderson, 217 Iowa 1186, 1193, 252 N: W. 117; Carpenter v. Security Fire Ins. Co., 183 Iowa 1226, 1233, 168 N. W. 231; First Nat. Bank v. Royal Indemnity Co., 193 Iowa 221, 186 N. W. 934; Dawson v. Bankers Life Co., 216 Iowa 586, 600, 247 N. W. 279; Lunde v. Cudahy Packing Co., 139 Iowa 688, 700, 117 N. W. 1063; Brown v. West Riverside Coal Co., 143 Iowa 662, 669, 120 N. W. 732, 28 L. R. A., N. S., 1260; Welsch v. Frusch L. & P. Co., 197 Iowa 1012, 193 N. W. 427; Avise v. Interurban R. Co., 174 Iowa 592, 156 N. W. 807; Ramberg v. Morgan, 209 Iowa 474, 218 N. W. 492; George v. Iowa & S. W. Ry. Co., 183 Iowa 994, 168 N. W. 322.

It is, of course, not sufficient to show that the negligence charged might fairly and reasonably have caused the injury, if the circumstances shown indicate an equal probability that it was due to some other cause. In Swaim v. Chicago R. I. & P. R. Co, 187 Iowa 466, 471, 174 N. W. 384, 386, this rule was thus stated:

"It is true that if, under all the proved circumstances, the conclusion that the injury was the proximate result of defendant's negligence is no more reasonable or probable or likely than that it was brought about by some other cause, for which the defendant is not responsible, then, of course, the plaintiff has failed to establish a fact without which he cannot recover."

See also Asbach v. Chicago B. & Q. Ry. Co., 74 Iowa 248, 37 N. W. 182; O'Connor v. Chicago R. I. & P. R. Co., 129 Iowa 636, 638, 106 N. W. 161; Neal v. Chicago R. I. & P. R. Co., 129 Iowa 5, 8, 105 N. W. 197, 2 L. R. A., N. S., 905; Dingmon

v. Chicago & N. W. R. Co., 194 Iowa 721, 190 N. W. 393; Miller v. Hart-Parr Co., 165 Iowa 181, 144 N. W. 589.

With respect to the other suggested causes of plaintiff's injury which the appellee contends have not been excluded, we repeat that they either have no support in the record or they have been negatived. The appellant was not bound to disprove every suggested cause. As stated in Boles v. Hotel Maytag Co., 218 Iowa 306, 310, 253 N. W. 515, 517:

"But if the circumstances supporting a theory *of* negligence are of greater weight than the evidence supporting the theory of *no* negligence, then it becomes a question of fact for the jury to determine whether or not the cause of the injury was the negligence alleged. A person is not required to prove his theory of negligence by testimony so clear as to exclude every other possible theory."

Announcing the same rule are Berg v. Willett, 212 Iowa 1109, 1114, 232 N. W. 821; Kling v. Chicago M. & St. P. Ry. Co., 115 Iowa 133, 88 N. W. 355; Swaim v. Chicago R. I. & P. R. Co., 187 Iowa 466, 471, 174 N. W. 384; Duncan v. Fort Dodge Gas & Electric Co., 193 Iowa 1127, 1133, 188 N. W. 865; Gordon v. Chicago R. I. & P. R. Co., 146 Iowa 588, 594, 123 N. W. 762; Huggard v. Glucose Sugar Ref. Co., 132 Iowa 724, 109 N. W. 475; Bonjour v. Iowa Tel. Co., 176 Iowa 63, 72, 155 N. W. 286, 290; Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N. W. 41; Olson v. Cushman, 224 Iowa 974, 979, 276 N. W. 777, 780. In the last cited case, the deceased was injured when a school bus in which he was riding overturned. Just how he was hurt he did not know. In sustaining a judgment for the administrator, speaking through Justice Mitchell, we said:

"In the case at bar we find Elmer Olson physically fit on the morning that he entered the bus. Within twenty or thirty minutes after the accident he complained of a pain back of his left ear. A little later on he complained again. That evening he told his mother, and she applied the remedies known

to her. From then on until the hour of his death he was being treated by his mother and the physicians. The medical testimony eliminated other probable causes of a mastoid condition. Clearly, in view of such a record, the question was for the jury and the court was right in submitting it."

Our decision in that case fully supports what we have said herein.

■ II. Under the record should the issue of the defendant's negligence have been submitted to the jury? The answer to this question depends largely upon whether the plaintiff was entitled to the aid of the res ipsa loquitur doctrine in proving his case. We say "largely" because there were admissions of the defendant which lend some assistance to the plaintiff. As heretofore stated, the plaintiff alleged no specific grounds, but alleged and bottomed his right to recover solely upon general negligence. So far as the pleadings were concerned, the doctrine was available to him. While proper pleading is a necessary step, it is of no avail, unless the character of the occurrence and the surrounding circumstances include certain essentials.

The essentials, as gathered from various authorities, are set out in Orr v. Des Moines Elec. Light Co., 207 Iowa 1149, 1154, 222 N. W. 560, 562, as follows:

"This rule is peculiar to the law of negligence. The inference or presumption raised under this doctrine becomes the substitute for specific proof of acts or omissions constituting negligence. It only permits the jury to draw a reasonable inference from circumstances which, prima facie, in the ordinary course of things, are generally indicative of negligence. It dispenses with the actual evidence in the first instance, or simply provides one method by which the plaintiff may prove the negligence charged against the defendant. It is only applicable, however, where, under the existing circumstances, direct evidence is absent and not readily available. 45 Corpus Juris 1206, Section 774.

"Generally speaking, this rule is applicable when the thing causing the injury is shown to be under the control of the defendant and the accident is such as, in the ordinary course of business, would not have happened if reasonable care had been used. 1 Shearman & Redfield on Negligence (6th Ed.), Section 59, says:

" 'When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.'

"The presumption under these circumstances arises from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experiences of the past. What happened in the past under the same conditions will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown. Judson v. Giant Powder Co., 107 Cal. 549 (40 Pac. 1020, * * *).

" ' * * * the doctrine is applicable only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence, and in the light of ordinary experience would presumably not have happened, if those who had the management or control exercised proper care. * * *' 45 Corpus Juris 1211. * * *

"It is evident from the foregoing that the question of whether or not this doctrine should be applied in any given case depends wholly on the fact situation; hence no ironclad rule can be laid down as to when said doctrine shall be applied."

We set out two other comments, by eminent authorities, throwing light upon the rule:

"Mr. Justice Holmes has said: ' ''Res ipsa loquitur,'' which is merely a short way of saying that, so far as the court can

see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case. * * *' Graham v. Badger, 164 Mass. 42, 41 N. E. 61.

"Dean Wigmore, after stating the conditions of the rule, adds that 'the particular force and justice of the presumption regarded as a rule throwing upon the party charged the duty of producing evidence consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him, but inaccessible to the injured party.' 4 Wigmore on Evidence, Sec. 2509." Maki v. Murray Hospital, 91 Mont. 251, 7 P. 2d 228, 231.

The importance and necessity of requiring the party charged with negligence, who, alone, can enlighten the tribunal, to disclose the facts, in the trial of a case, like the one before us, has been commented upon by various courts. In Meadows v. Patterson, 21 Tenn. App. 283, 100 S. W. 2d, 417, 419, the Tennessee Court of Appeals said:

"In no other way, under usual and ordinary conditions, could the patient obtain redress for such an injury, and it is no hardship upon the defendant to explain, as he alone can, how the injury occurred. If innocent of any wrong, the door of escape is left open."

The Montana court in Maki v. Murray Hospital, 91 Mont. 251, 262, 7 P. 2d 228, 231, said:

"While it is necessary, in every personal injury case, to prove negligence, courts, generally, recognize the fact that persons are often injured in such manner, or through such instrumentalities, that it would be impossible to prove the facts showing negligence, and yet by common knowledge and experience, it is clear that such injury would not have been sus-

tained ordinarily, had the responsible party not been negligent. Under such circumstances the application of the ordinary rules of evidence would work manifest injustice and render the maxim 'for every wrong there is a remedy' * * * nugatory by denying one, patently entitled to damages, satisfaction merely because he is ignorant of facts peculiarly within the knowledge of the party who should, in all justice, pay them. Consequently, in order that justice may prevail, in such cases the courts, generally, apply the doctrine of res ipsa loquitur."

The Circuit Court of Appeals, Eighth Circuit, in Vergeldt v. Hartzell et al., 1 F. 2d 633, 635, an action against the defendant dentists for personal injuries suffered through negligence in the operation of a polishing drill, speaking through Judge Scott, of the Northern District of Iowa, sitting with Circuit Judge Kenyon and District Judge Amidon, after quoting section 2509 of Wigmore on Evidence, part of which has heretofore been set out, said:

"It would seem to us that the instant case meets all of the requirements. The apparatus was such that no injurious operation or result would be expected unless from careless user. Both inspection and user was at the time in the exclusive control of Dr. Werrick. According to the plaintiff's testimony the injury happened without any voluntary action on her part at the time, and certainly Dr. Werrick's opportunity to know the true cause was greatly superior to that of the plaintiff."

The necessity of complete and exclusive control of the instrumentality, for the application of the res ipsa loquitur rule, has been repeatedly referred to by the court. Basham v. Chicago Great Western R. Co., 178 Iowa 998, 154 N. W. 1019; Tuttle v. Railroad Co., 48 Iowa 236; Brown v. Des Moines Bottling Works, 174 Iowa 715, 156 N. W. 829, 1 A. L. R. 835; Anderson v. Fort Dodge Street Ry. Co., 208 Iowa 369, 266 N. W. 151; Larrabee v. Des Moines Tent & Awning Co., 189 Iowa 319, 178 N. W. 373; Crozier v. Hawkeye Stages, et al., 209 Iowa 313, 228 N. W. 320; Aita v. John Beno Co., 206 Iowa

1361, 222 N. W. 386, 61 A. L. R. 351; Orr v. Des Moines Elect. Light Co., 213 Iowa 127, 238 N. W. 604; Boles v. Hotel Maytag Co., 221 Iowa 211, 265 N. W. 183; Van Heukelom v. Blackhawk Hotels Corp., 222 Iowa 1033, 1042, 270 N. W. 16; Olson v. Cushman, 224 Iowa 974, 276 N. W. 777; Peterson v. De Luxe Cab Co., 225 Iowa 809, 281 N. W. 737; Harvey v. Borg, 218 Iowa 1228, 257 N. W. 190.

The appellee contends that the rule of res ipsa loquitur has no application in an action in which a patient seeks to recover damages from a physician, surgeon or dentist, for personal injuries alleged to have been caused by his negligence in serving the patient. One of the reasons given is that such a professional man when employed, broadly speaking, is required to exercise only that degree of knowledge, care, skill, and diligence, ordinarily possessed and exercised by members of his profession, in the same general line of practice, in like communities, under similar circumstances. He does not warrant a cure, nor guarantee the best possible result. And the fact that he attains neither, in any particular case, is not, in itself, ordinarily, evidence of negligence, or want of knowledge, skill or diligence on his part, nor does it afford any presumption thereof. That is the general rule as it has been stated by this court. Piles v. Hughes, 10 Iowa 579, 582; Berg v. Willett, 212 Iowa 1109, 232 N. W. 821; Hair v. Sorensen, 215 Iowa 1229, 247 N. W. 651, and cases cited therein. The rule is based upon sound reasons. As stated by Woodward, J., in McCandless v. McWha, 22 Pa. 261, and quoted by Justice Cole, in Smothers v. Hanks, 34 Iowa 286, 291, 11 Am. Rep. 141:

" 'He deals not with insensate matter like the stone mason or bricklayer, who choose their materials and adjust them according to mathematical lines, but he has a suffering human being to treat, a nervous system to tranquilize, and a *will* to regulate and control.' "

He takes his patients as they come to him, with all of their physical and mental infirmities, conditions, conduct, and tem-

peramental idiosyncrasies, for none of which he is responsible, but which may, and probably will, hinder or defeat the very best professional service. The most capable surgeon may place and retain the parts of the fractured bone in perfect apposition, but a nonunion may result because there may be a deficiency of callus secretion. O'Grady v. Cadwallader, 183 Iowa 178, 186, 166 N. W. 755.

The rule of res ipsa loquitur does not apply, because one of its essentials is lacking—the physician or surgeon does not have complete and exclusive control over the instrumentality with which he is working.

It is also urged by the appellee, that whether a doctor of medicine, surgery, or dentistry exercised the requisite care or skill in any case cannot be determined by the testimony of laymen or nonexperts, or be left to the judgment of a jury or court, unaided by expert testimony, but that only those learned or experienced in the profession may testify as to what should or should not have been done. This court has spoken to that effect, and that is ordinarily the rule. Nelson v. Sandell, 202 Iowa 109, 209 N. W. 440, 46 A. L. R. 1447, and cases cited. But there are exceptions to the rule of evidence just stated, and also exceptions to the general rule, just previously stated, respecting the application of the res ipsa loquitur rule to cases of professional negligence or incapacity. Respecting the latter, this court in Orr v. Des Moines Elect. L. Co., 207 Iowa 1149, 1155, 222 N. W. 560, 562, stated that:

"* * * the question of whether or not this doctrine should be applied in any given case depends wholly on the fact situation; *hence no ironclad rule can be laid down as to when said doctrine shall be applied.*" (Italics ours.)

With respect to the rule of evidence referred to, this court has also spoken. In Evans v. Roberts, 172 Iowa 653, 658, 154 N. W. 923, 925, it appears that the surgeon, in removing adenoids from a child, negligently and unskillfully cut off a portion of her tongue in the use of an instrument known as a

"gag." In sustaining a judgment for plaintiff on a verdict of the jury, the court, speaking through Justice Weaver, said:

"This is not the ordinary case where a practitioner is sought to be charged with liability for alleged improper treatment of some bodily ailment or infirmity. He was employed to remove the adenoids from the plaintiff's throat, and there is neither claim nor proof that he did not successfully remove them. His negligence, if any, was in failing to take due care to avoid injury to the undiseased parts in the vicinity of which the operation was performed; and while it may be true that, had the operation upon the adenoids been unsuccessful and disappointing, no inference of negligence or want of skill would arise therefrom, it does not follow that this rule applies with the same force to an injury done by him to sound and undiseased parts of the plaintiff's person which he was not called upon to treat and did not pretend to treat. If a surgeon, undertaking to remove a tumor from a person's scalp, lets his knife slip and cuts off his patient's ear, or, if he undertakes to stitch a wound on the patient's cheek, and, by an awkward move, thrusts his needle into the patient's eye, or, if a dentist, in his haste, leaves a decayed tooth in the jaw of his patient and removes one which is perfectly sound and serviceable, the charitable presumptions which ordinarily protect the practitioner against legal blame where his treatment is unsuccessful, are not here available. It is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery. It does not need scientific knowledge or training to understand that, ordinarily speaking, such results are unnecessary and are not to be anticipated, if reasonable care be exercised by the operator. When they do happen, then proof of other facts and circumstances having any fair tendency to sustain the charge of negligence will be sufficient to take the question to the jury, and this may be true even though, if the alleged negligence pertained solely to the treatment of

the diseased parts, the court might be inclined to dispose of it as a matter of law. * * *

"That there is evidence of negligence, in addition to the fact of the injury, can hardly be questioned. Defendant did not see fit to testify in the case; hence the trial court and jury and this court are without the assistance which might possibly have been furnished by his explanation of the matter. * * *

"If we understand counsel correctly, it is their contention that negligence in cases of this nature can be established only upon the testimony of competent experts. What may be the rule where the sole question is upon the treatment of the diseased part and whether it was in accordance with approved and medical standards, we need not here decide; for, as we have already noted, this is not a case of that kind. The jury here did not have to consider whether the method of the defendant in removing the adenoids was correct or scientific, but whether the unintentional wounding of plaintiff's tongue was occasioned by lack of reasonable care on his part. This, it would seem very clear, involves no question of science or necessarily of expert knowledge."

The decision has been widely and approvingly cited.

In Kopecky v. Hasek Bros. et al., 180 Iowa 45, 49, 162 N. W. 828, 830, the defendant dentist, in preparing a tooth for filling, negligently punctured the wall of the root with his drill, and the filling protruded into the surrounding tissues, causing a serious abscess. Another dentist later removed the tooth and discovered the condition. He testified that the puncture had apparently been made with an instrument, and that in killing the nerve in a tooth a dentist should avoid puncturing the root. In that case, as in the one before us, the defendants made no attempt to acquit themselves of negligence, but made a motion to direct a verdict at the close of plaintiff's testimony, which motion was sustained. In reversing, the court said:

"Counsel's argument in support of the judgment below is confidently based upon the proposition that the evidence fails

to show any negligence or lack of ordinary skill on the part of defendants, and this seems to be based on the theory that, in order to recover, there must be direct testimony that they in some way departed from the 'recognized rules and standards of their profession.' But this is not the rule. Negligence may be found from facts and circumstances from which the want of due care is a reasonable inference, as well as from direct evidence by experts or others. If an injurious result is shown to have followed the treatment, such result as does not ordinarily attend or follow when due care and skill have been exercised by a competent operator, an inference of negligence is justified, in the absence of explanation, and if a jury so finds from such a showing, its verdict thereon is not without support. We had occasion to discuss this subject in the recent case of Evans v. Roberts, 172 Iowa 653, where the rule above stated was applied. See also Reynolds v. Smith, 148 Iowa 264. We are content to reaffirm the principles upheld in those cases, as well as in numerous precedents of like import which we will not prolong this opinion to cite or discuss.''

Most people have had teeth extracted at some time. While they dread going to a dentist, ordinarily there are no untoward results, unless the tooth is impacted, or is abnormally rooted, the bone is diseased, or there is infection in the mouth, or there is some contributing cause other than the work itself. The record discloses no such complication in this case. There was no question of diagnosis, or of involved treatment. No X-rays were taken. It was a mechanical job. It is common knowledge that, in extracting a tooth or its root, neither ordinarily passes into the trachea and thus into the lungs. In fact such an occurrence is most rare. In the words of the authorities it is a matter of such rare occurrence and unusual character, that its very happening carries with it a strong inherent probability of negligence. For the purpose of this case the defendant's testimony establishes this fact. He testified:

''I claim to be an expert as a teeth extractor. I have made

a specialty of extracting teeth since 1919. I don't think there are many who extract more teeth per year than I.''

The wife of the plaintiff testified:

"A day or two after my husband coughed up the tooth, I called up Dr. Moravec by phone. Told him who I was and asked him if he had ever had anything happen in his office such as the root of a tooth going down into a man's lung. *He said that such things do not happen in this office.*''

We have then all of the instrumentalities, including the unconscious body of the plaintiff, under the complete and exclusive control of the defendant. We have an occurrence which, according to general knowledge, and the defendant's own admission, does not happen in the ordinary course of teeth extraction, if reasonable care is used. We have also a record which might reasonably warrant a jury in finding that it did happen. There is no explanation by the defendant, either that it could not have happened, or that if it did happen it was through no fault of his, or was the fault of the plaintiff. The plaintiff, because of his unconscious condition has no knowledge of what the defendant did or failed to do. Under these circumstances the rule of res ipsa loquitur is applicable and a jury would be warranted in inferring therefrom that the root of the tooth passed into the plaintiff's right lung, through the failure of the defendant to exercise proper care or skill.

The defendant filed simply a general denial. He does not plead a justification or excuse for his act, or that what he did complied with the usual practice of his profession. In James v. Robertson, 39 Utah 414, 117 P. 1068, 1073, a judgment was permitted against the defendant doctor, for carelessly dropping a solution of carbolic acid in the plaintiff's eye, after removing a cyst from the eyelid. The court said:

"In this connection it is contended that there is no expert evidence upon which the jury could base a finding that the appellant had not exercised that degree of skill and care which

is ordinarily exercised by those engaged in his calling in like or similar cases. It will be observed that this case is somewhat peculiar, in that the injury complained of did not really arise out of any want of skill on the part of the appellant in performing the operation on respondent's eyelid, in so far as the operation is concerned. The injury to the eye was caused by an act which did not necessarily require any more than the skill, knowledge, and experience of any ordinarily prudent person. If appellant permitted a solution of carbolic acid to come in contact with the cornea of respondent's eye, without any necessity therefor, and of such strength as would injure the eye, he might be found guilty of negligence. * * *

"It is true, as appellant's counsel suggests, that in order to authorize a finding that one who is following a profession or calling requiring special skill, knowledge, and experience is guilty of negligence or unskillfulness it is necessary to furnish some proof from some source possessing the required skill, knowledge, and experience that the acts complained of did not measure up to the standard of skill, knowledge, and experience required in the particular calling or profession. In this case, however, the principle cannot be applied to its full extent, for the reason that appellant did not come into court justifying his act or conduct; that is, he does not claim that, if he permitted a solution of carbolic acid to come in contact with the cornea of respondent's eye, in doing so his conduct was justified by the ordinary and usual methods which are pursued by those of his profession under like circumstances. In other words, appellant does not claim protection because he has conformed to the standards of his profession. What he really contends for in this connection is: (1) That no part of the solution he used was through any act of his permitted to enter respondent's eye, and hence he was not negligent in that regard; (2) that, although it were conceded that some of the solution did enter respondent's eye, yet the solution was not of sufficient strength to produce the injury complained of; and (3) that the result to the eye was produced by a cause or causes for which he was

not responsible. *It is apparent that most, if not all, of the conclusions involved in the foregoing propositions do not necessarily call for expert evidence.*"

See also Bennett v. Murdy, 61 S. D. 471, 249 N. W. 805, where there was judgment for plaintiff, for permitting a piece of the turbinate bone from the nose to pass into the lung while being removed.

■ It has seldom been questioned, that where the act of omission or commission, upon the part of the surgeon, has been plainly negligent, as where a sponge, gauze, an instrument, or needle has been left in the body, the rule of res ipsa loquitur applies, and that it is also unnecessary to show by expert testimony that such an act does not comport with the required standards. Reynolds v. Smith, 148 Iowa 264, 127 N. W. 192; Evans v. Munro, R. I., 83 A. 82; Davis v. Kerr, 239 Pa. 351, 86 A. 1007, 46 L. R. A., N. S., 611; Ales v. Ryan, 8 Cal. 2d 82, 64 P. 2d 409; Sellers v. Noah, 209 Ala. 103, 95 So. 167; Hall v. Grosvenor, 267 Ill. App. 119; Armstrong v. Wallace, 8 Cal. App. 2d 429, 47 P. 2d 740; Wharton v. Warner, 75 Wash. 470, 135 P. 235; Le Faive v. Asselin, 262 Mich. 443, 247 N. W. 911; Funk v. Bonham, 204 Ind. 170, 183 N. E. 312; Smith v. Zeagler, 116 Fla. 628, 157 So. 328; Moore v. Ivey, Tex. Civ. App., 264 S. W. 283; Ernen v. Crofwell, 272 Mass. 172, 172 N. E. 73; Alonzo v. Rogers, 155 Wash. 206, 283 P. 709, 21 R. C. L. 388.

In other cases where the negligence was of a different type but clearly not according to good practice the holdings have been to the same effect. Weintraub v. Rosen, 7 Cir., 93 F. 2d 544; Vonault v. O'Rourke, 97 Mont. 92, 33 P. 2d 535 (where the patient was burned in some way on the breast, in an abdominal operation); Covington v. James, 214 N. C. 71, 75, 197 S. E. 701 (where one bone in the lower leg was broken in setting a fracture in the other one).

In Vergeldt v. Hartzell, 8 Cir., 1 F. 2d 633, 635, already referred to herein, wherein the dentist injured the plaintiff in using a polishing drill, the court after referring to the fact

that the Wisconsin court, in Vale v. Noe, 172 Wis. 421, 179 N. W. 572, had held that the res ipsa loquitur doctrine did not apply in a similar case, which holding was followed by the trial court, said:

"We are not prepared to follow the trial court to this conclusion. While the facts in Vale v. Noe, supra, agree quite closely to the facts in the instant case, the brief notice given by the Wisconsin court to the doctrine under consideration is not to us convincing. No authority was cited by the court in that case and none is cited in the briefs of counsel here which seem to sustain such conclusion.

"It will be observed that this is not an action in which is drawn in question through diagnosis, method or manner of treatment, or operation by a physician or surgeon. The theory of plaintiff's allegation and brief in support thereof is, not that the defendant's treatment or operation was unprofessional or below standard or that the defendant was unskillful in his work, but that the defendant was negligent and failed to observe reasonable care while performing the operation, and by reason thereof an untoward act occurred producing a positive and independent injury. The position occupied by the plaintiff at the time, and the superior opportunity of the defendant to observe and know the real cause of the accident, taken in connection with the accident itself and the apparent involved circumstances, seems to us to make the case one to which the rule res ipsa loquitur is applicable."

After referring to the case of Evans v. Roberts, 172 Iowa 653, 154 N. W. 923, supra, the court continued:

"The very careful opinion of the late Chief Justice Weaver in that case draws the distinction between the two classes of cases we have suggested. He was discussing a case in which a surgeon was operating for the removal of adenoids. One of the appliances slipped, and the surgeon inflicted a very severe wound with his instrument. * * *

"We again agree with the Iowa court in the distinction

drawn between cases involving the merits of a diagnosis and scientific treatment and cases where during the performance of surgical or other skilled operations an ulterior act or omission occurs, the judgment of which does not require scientific opinion to throw light on the subject.''

The reasoning in the Vergeldt case is followed in Brown v. Shortlidge, 98 Cal. App. 352, 277 P. 134, a case in which a surgeon in placing a gag in a child's mouth preparatory to removing her tonsils and adenoids, knocked out two of her teeth.

Coming to cases more closely related by their facts to the case at bar, we call attention to the case of Keily v. Colton, 1 Robertson's City Court Reports, 439 (Marine Court of the City of New York). The defendant dentists were sued for damages, for negligently permitting a tooth to pass into plaintiff's lungs in extraction. It was coughed up four weeks later. In holding that the happening itself was prima facie evidence of negligence, the court said:

"They knew that the plaintiff, while under the influence of the anaesthetic, had no control of his faculties; that they were powerless to act, and that he was unable to exert the slightest effort to protect himself from any of the probable or possible consequences of the operation which they had undertaken to perform. He was in their charge and under their control to such an extent that they were required to exercise the highest professional skill and diligence to avoid every possible danger, for the law imposes duties upon men according to the circumstances in which they are called to act. In this case skill and diligence must be considered as indissolubly associated. The professional man, no matter how skillful, who leaves an essential link wanting or a danger unguarded in the continuous chain of treatment is guilty of negligence, and if the omission results in injury to the patient, the practitioner is answerable.

"The defendants were employed to take the diseased tooth out; instead of doing which they allowed part of it to go down

the plaintiff's throat. This was out of the ordinary course of treatment, and how such an unusual result was brought about was a fact peculiarly within the knowledge of the defendants, which they were required to explain, and it was for the jury to say whether their explanation was satisfactory.''

In Toy v. Mackintosh, 222 Mass. 430, 110 N. E. 1034, 1035, Ann. Cas. 1918C, 1188, action was brought for damages for the negligence of the defendant dentist in permitting an extracted tooth to lodge in plaintiff's lungs. The evidence disclosed that 9 weeks after he left the dentist's office he coughed up a tooth which he produced in evidence. His coughing was immediately thereafter relieved. The court held ''that the question whether the defendant was negligent in permitting the tooth to be inhaled by the plaintiff when he was in an unconscious condition was for the jury.''

In Nelson v. Parker, 104 Cal. App. 770, 286 P. 1078, the defendant dentist while extracting the tooth of a 7-year-old boy, on February 18, 1918, negligently let an extracted tooth pass into his lungs. He coughed it up in October 1924. Judgment for the plaintiff was affirmed. The court held that expert testimony was not necessary respecting the proper care under such circumstances.

In Wolfe v. Feldman, 158 Misc. 656, 286 N. Y. S. 118, 121, recovery was allowed plaintiff for injuries suffered while under an anesthetic, from the negligence of an expert teeth extractor. The rule of res ipsa loquitur was held applicable. Benson v. Dean, 232 N. Y. 52, 58, 133 N. E. 125. The court said:

''For defendant's failure to satisfactorily explain the absence of his negligence for his failure to observe the degree of care necessary under the circumstances, plaintiff should have judgment.''

In Bollenbach v. Bloomenthal, 255 Ill. App. 305, plaintiff was placed under a general anesthetic, and in extracting a tooth that had an amalgam crown, that portion passed into the lung of the plaintiff and was coughed up about 3 months later. The

res ipsa loquitur rule was held applicable. The court commented on the fact that the plaintiff was helpless, and had no knowledge of what took place and was under the complete control of defendants. On appeal (341 Ill. 539, 173 N. E. 670, 672), the supreme court reversed the trial court for an error in an instruction stating the effect of the presumption raised by the res ipsa loquitur rule, and for the further reason that because of certain matters the dentist did not have complete control of the instrumentalities, the rule did not apply. While the facts relied upon for the latter holding seem to the writer to be of little persuasive force, the court held that the occurrence made a prima facie case, saying:

"No witness, either lay or expert, testified that anything done by Dr. Bloomenthal in extracting plaintiff's tooth was negligent or unskillful, or that he had omitted to do anything which a reasonably careful and skillful dentist would have done under the same or similar circumstances, or that in the exercise of due care and skill he should have known that a fragment of tooth and filling had gone down plaintiff's throat. This explanation by the defendants tending to show that the injury complained of, though unusual, was not due to any lack of care on their part, was sufficient to overcome the prima facie case of the plaintiff and rebut all presumptions of negligence, as such presumptions vanish when contrary evidence is produced."

The error of the trial court in the case before us was in not submitting the case to the jury upon the negligence inferred under the rule, and thus require the defendant to go forward with his testimony in rebuttal.

In Ellering v. Gross, 189 Minn. 68, 248 N. W. 330, the injury was caused by the operation of a polishing drill, in cutting the flesh at the base of the tongue. The court sustained a judgment for plaintiff, and followed the reasoning and the rule of the Vergeldt case and Evans v. Roberts, 172 Iowa 653, 154 N. W. 923, both referred to herein.

In Barham v. Widing, 210 Cal. 206, 291 P. 173, judgment was allowed against a dentist for improper disinfection. Expert testimony was held not necessary to establish such negligence.

In Pendergraft v. Royster, 203 N. C. 384, 166 S. E. 285, 289, a malpractice case, the court quoted with approval from Herzog's Medical Jurisprudence as follows:

" 'In many other cases it has been held that mere proof of a mistake or poor results does not itself prove malpractice, *but where the injury is received while the patient is unconscious, the doctrine commonly is held to apply because under such circumstances the patient would not be able to testify as to what had happened, whereas the physician could.'* " (The italics were supplied by the North Carolina court.)

In Yarrington v. Pittenger, 149 A. 347, 8 N. J. Misc. 143, and in McGehee v. Schiffman, 4 Cal. App. 50, 87 P. 290, recovery was allowed where a tooth went into the lung after extraction, but there was direct evidence. See also Eichholz v. Poe, Mo. Sup., 217 S. W. 282, and Hill v. Jackson, 220 Mo. App. 1302, 290 S. W. 1012.

Appellee has cited the following cases, and we have read them all, and others of like import. In our judgment they are not applicable, or they can be distinguished. Ewing v. Goode, C. C., 78 F. 442, 444, was an eye operation having to do with what the eminent Judge Taft describes as "the mysterious and dread disease of glaucoma, with respect to which a layman could have no knowledge at all." Thorpe v. Talbott, 197 Iowa 95, 196 N. W. 716, was a bone fracture case. Stemons v. Turner, 274 Pa. 228, 117 A. 922; Runyan v. Goodrum, 147 Ark. 481, 228 S. W. 397; Kuehnemann v. Boyd, 193 Wis. 588, 214 N. W. 326, 215 N. W. 455; Ballance v. Dunnington, 241 Mich. 383, 217 N. W. 329, 57 A. L. R. 262, were all actions for X-ray burns. There is an unhappy discord among the authorities as to whether the res ipsa loquitur rule applies to such cases. This court has not definitely passed upon it, but see Whitmore v. Herrick, 205 Iowa 621, 218 N. W. 334; Rulison v. X-ray Corp., 207 Iowa 895, 223 N. W. 745; Shockley v.

Tucker, 127 Iowa 456, 103 N. W. 360. The cited case of Miller v. Toles, 183 Mich. 252, 150 N. W. 118, L. R. A. 1915C, 595, was a complicated foot injury. Furthermore Michigan cases have little application as the res ipsa loquitur rule is not permissible in that state. Dunbar v. Adams, 283 Mich. 48, 276 N. W. 895. The court referred to that fact in Loveland v. Nelson, 235 Mich. 623, 209 N. W. 835, but stated that the court had uniformly held that negligence may be established by circumstantial evidence, and permitted a recovery by plaintiff where a dentist had injected lysol into her gums instead of an anesthetic. Tady v. Warta, 111 Neb. 521, 196 N. W. 901, and McGraw v. Kerr, 23 Colo. App. 163, 128 P. 870, are cited but the facts distinguish them.

Krueger v. Chase, 172 Wis. 163, 177 N. W. 510, was an action against a dentist for negligence in permitting particles of a tooth and filling to enter the lungs. There was a judgment for plaintiff which was reversed. The case was fully tried with expert testimony on each side. The court held that notwithstanding there was a conflict in the evidence, there was not sufficient evidence of negligence to go to the jury. The court held that the question of negligence was one of expert testimony. In Cross v. Albee, 250 Mass. 170, 145 N. E. 45, the facts and the holding were like those in the Krueger case. Appellee cited the case of Koelzer v. Florence, an Ohio case, from the Circuit Court of Appeals in Ohio, decided March 23, 1925, but did not give the report. According to appellee's statement there was a judgment for the defendant that the res ipsa loquitur rule did not apply to a case where a dentist permitted a tooth to enter the lungs in extracting it. After considerable search we were unable to find the case.

While there is support for the appellee's contention upon the proposition discussed in division II of this opinion, we are satisfied that the res ipsa loquitur rule is applicable to the case, and that this position is supported by the sounder reasoning and the greater weight of authority.

It is our judgment that both the issue of negligence and of proximate cause should have been submitted to the jury.

Our decision is limited to the case before us. Neither does the court intend by anything said herein to express any view as to the weight of the evidence, nor the liability of the defendant. The judgment is reversed and remanded.—Reversed and remanded.

SAGER, RICHARDS, STIGER, and OLIVER, JJ., concur.